IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS LUTHRINGER,

                **Plaintiff,**

    v.                                    **1:06-cv-2501-WSD**

MEDSCAN, INC. (N/K/A
MEDIMAGING, INC.),
SAUGATUCK CAPITAL CO. LTD.
PARTNERSHIP IV SBIC, FAMILY
CAPITAL GROWTH PARTNERS,
L.P., GEORGE SHAUNNESSY,
PETER BIBB, and DANIEL BAFIA,

                **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Thomas Luthringer's ("Luthringer") Motion to Remand [10].  Also before the Court is Defendant MedImaging, Inc's ("MedImaging") Motion to Drop All Other Defendants as Parties [3], the Motion to Dismiss of Defendants Saugatuck Capital Co. Ltd. Partnership IV SBIC ("Saugatuck") and Family Capital Growth Partners, L.P. ("FCGP") [4], the Motion to Dismiss of Defendant Daniel Bafia [7], and Defendant Shaunnessy's Motion to Dismiss [5].

## I.     BACKGROUND

On July 11, 2003, Luthringer and each of the Defendants are alleged to have entered into an agreement governing their behavior as stock owners in MedImaging ("Shareholder's Agreement").  Also on July 11, Luthringer and MedImaging entered into an agreement concerning the terms and conditions of Luthringer's employment as MedImaging's Chief Operating Officer ("Employment Agreement").  The Employment Agreement had a three-year term, set to expire on July 10, 2006.

Luthringer alleges that on May 19, 2006, Defendant Shaunnessy, acting as MedImaging's Chief Executive Officer, informed him that he was going to be replaced as MedImaging's COO.  Luthringer alleges that Shaunnessy told him that the decision to replace him occurred in a meeting between Shaunnessy, MedImaging Board Member Tom Berandino, and Frank Hawley, managing director of Saugatuck.[1]

On June 1, 2006, Luthringer sent a letter to MedImaging requesting that his Employment Agreement, which was scheduled to expire on July 10, 2006, be

---

[1] The Shareholders' Agreement grants to Saugatuck a contractual right to designate two of the five MedImaging Board Members, and allows it input with regard to the designation of a third Board Member.

renewed.  Shaunnessy replied to Luthringer by letter dated June 7, 2006 (the "June

7 Letter").  In the June 7 Letter, Shaunnessy stated that a determination had been

made that the Employment Agreement would not be renewed.  The letter further

stated, "MedImaging's current intent is to terminate your employment  on

July11, 2006 . . . .  Regardless of whether MedImaging terminates your

employment on July 11, 2006 or on a later date, the Employment Agreement . . .

will terminate on July 10, 2006."[2]

      Luthringer claims that the determination not to renew the Employment

Agreement violated the Shareholders' Agreement.  Luthringer further alleges that

Saugatuck or FCGP may have been involved in this determination.[3]

---

[2] Luthringer has not alleged on what date he was actually terminated.

[3] MedImaging submitted to the Court two "Written Consent of the
Shareholders in Lieu of a Special Meeting" signed on June 1, 2006 ("Written
Consents") (Defendant MedImaging's Response in Opposition to Plaintiff's
Motion to Remand, Exhs. 1-2.)   The first of these documents, signed by
representatives of Saugatuck and FCGP, states that "Saugatuck and management
desire to remove Thomas Luthringer as a member of the Board of Directors of the
Company. . ."  While this document does not address Luthringer's removal as a
MedImaging officer, it is probative of Luthringer's allegations that Saugatuck or
FCGP were involved in the determination not to renew the Employment
Agreement.  The second document concerns Luthringer's removal as an officer.
That document is, notably, signed not only by four members of the Board of
Directors, but also by Saugatuck as the majority shareholder.  The Written
Consents demonstrate that Saugatuck and FCGP's involvement with MedImaging

On September 12, 2006, Luthringer filed this action.  In addition to MedImaging, Luthringer joined as defendants Saugatuck, FCGP, and other signatories to the Shareholders' Agreement ("Contested Defendants").  Luthringer alleges to have joined the Contested Defendants in their capacities as contracting parties for alleged breach of the Shareholders' Agreement, and not because of their status as MedImaging shareholders.

MedImaging filed a notice of removal on October 18, 2006, claiming diversity jurisdiction under 28 U.S.C. § 1332.  Luthringer is a resident of Tennessee.  Luthringer alleges, and MedImaging does not deny, that one or more limited or general partners of Saugatuck and FCGP also are Tennessee residents.[4] MedImaging argues that the Contested Defendants, including Saugatuck and FCGP, were fraudulently joined.  MedImaging asserts that the citizenship of Saugatuck and FCGP should be disregarded in the Court's determination of whether complete diversity exists.

---

may have been more hands-on than merely voting their shares.

[4] For diversity purposes, a limited partnership is a citizen of each state in which any of its limited or general partners are citizens.  Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1021 (11th Cir. 2004).

Because Saugatuck and FCGP are the only allegedly non-diverse Contested Defendants, and thus the only Defendants to whom the fraudulent joinder argument is relevant for purposes of Luthringer's motion to remand for a lack of diversity jurisdiction, the Court restricts its discussion of the fraudulent joinder argument to Saugatuck and FCGP.[5]

## II.    DISCUSSION

### A.    Removal and Fraudulent Joinder

The Court must, as a general matter, remand a case if the technical requirements of removal have not been met.  See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  The removing defendants carry the burden to demonstrate that the removal was effected properly, and "this burden is a heavy one."  Lampkin v. Media General, Inc., 302 F. Supp.2d 1293, 1294 (M.D.Ala. 2004).  Removal statutes are strictly construed in favor of state court jurisdiction.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

---

[5] Luthringer also alleges in passing that MedImaging's removal notice violated the rule of unanimity, because the Court did not receive an expression of consent for removal from each of the Defendants.  Because the Court finds that complete diversity does not exist, it need not address this argument.

MedImaging claims that this Court has diversity jurisdiction under 28 U.S.C. § 1332.  Section 1332 provides for "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a). "Diversity jurisdiction, as a general rule, requires complete diversity -- every plaintiff must be diverse from every defendant."  Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1564 (11th Cir. 1994).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  That is, a plaintiff cannot join non-diverse defendants to an action solely to preclude the jurisdiction of a federal court.  If the Court finds that certain defendants have been fraudulently joined, the Court overlooks the citizenship of those defendants when conducting its jurisdictional analysis.  Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997).

The removing party has a "heavy" burden of proving fraudulent joinder.  Id. at 1538.  "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either:  (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently

pled jurisdictional facts to bring the resident defendant into state court."  Id.  The Court must base its decision on the plaintiff's pleadings at the time of removal, although the Court may also consider supplementary affidavits later submitted by the parties.  Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005).

When determining whether non-diverse defendants have been joined fraudulently, the Court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of plaintiff.  Crowe, 113 F.3d at 1538.  "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved."  Id. at 1541-42 (citation and quotation omitted).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."  Id. at 1538 (quotation and citation omitted).

B.    The Shareholder Agreement

The only claim Luthringer asserts against Saugatuck and FCGP is breach of the Shareholders' Agreement.  Section 8 of the Shareholders' Agreement requires

-7-

representatives of MedImaging, Saugatuck, and FCGP to vote their shares to elect a Board consisting of five members. (Shareholders' Agreement, § 8(a)(iv).) The Shareholders' Agreement requires that the Board be composed of two representatives designated by Saugatuck, one representative mutually designated by Saugatuck and MedImaging's management, one representative designated by MedImaging management alone, and one representative designated by FCGP.

Subsection (d), titled "Special Voting Requirements," states:

> (ii) The affirmative vote of a majority of the Board of Directors shall be required in order for the Company to . . . .
>     (7) remove or terminate the employment agreements of the four (4) most highly compensated employees of the Company or enter into any material employment agreements or amendments thereto with or set the compensation of any such employee; . . . .

The Shareholders' Agreement has a choice-of-law clause selecting Florida law. (Shareholders' Agreement § 22.)

C.    Analysis

The Court's analysis comprises one simple issue: whether Luthringer's contract claim against Saugatuck and FCGP for breach of section 8(d)(iv)(7) of the Shareholders' Agreement might be cognizable under Florida law.

Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." <u>Sulkin v. All Florida Pain Mgmt., Inc.</u>, 932 So.2d 485, 486 (Fla.Dist.Ct.App. 2006).  A "material" breach is one "such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part. . ." <u>Atlanta Jet. v. Liberty Aircraft Servs., LLC</u>, 866 So.2d 148, 150 (Fla.Dist.Ct. App. 2004).  Whether a breach is "material" is a question of fact.  <u>See Moore v. Chodorow</u>, 925 So.2d 457, 461 (Fla.Dist.Ct.App. 2006).

Luthringer argues: (i) the determination referenced in the June 7 Letter that resulted in a refusal to renew his Employment Agreement represented an action to remove, terminate, or amend the Employment Agreement; (ii) the Shareholders' Agreement states that actions to remove, terminate, or amend the Employment Agreement must proceed subject to a meeting and vote by the majority of the Board of Directors; (iii) representatives of Saugatuck or FCGP may have participated in the determination referenced in the June 7 Letter; (iv) the determination referenced in the June 7 letter did not follow the procedure for a Board meeting and vote prescribed by § 8(d)(iv)(7) of the Shareholders'

Agreement; therefore (v) participation in this extra-contractual determination constituted a breach the Shareholders' Agreement.

The defendants seeking removal bear the heavy burden of showing that there is no possibility that Luthringer's claim against Saugatuck and FCGP can succeed. MedImaging first argues that the Shareholders' Agreement imposes only one obligation on the Contested Defendants: to vote their shares to elect a Board of Directors. MedImaging characterizes § 8(d)(iv)(7) of the Shareholders' Agreement as providing "guidance and directions" to the Board of Directors, but not an obligation to the signatories. This argument does not foreclose the possibility that Luthringer might recover for his claims that Saugatuck and FCGP breached the Shareholders' Agreement. Section 8(d)(iv)(7) of the Shareholders' Agreement establishes a specific procedure for altering, terminating, or amending the employment contracts of certain employees, including Luthringer. A state court could find that this section creates an obligation for that procedure to be followed, independent from the additional obligation for shareholders to vote their shares, and that Saugatuck and FCGP breached that obligation when they chose to operate outside of that procedure with respect to Luthringer's employment. In other words, a court could find that § 8(d)(iv)(7) operates as a guarantee to certain MedImaging

employees that material changes to their employment agreements would be made by the Board of Directors, and not in back-room meetings between MedImaging's investor-owners or by an informal, extra-contractual decision-making process.  A court could find that the conduct alleged to have been committed by Saugatuck and FCGP is the kind of informal, extra-contractual decision-making activity that the Shareholders' Agreement sought to prohibit, and thus a material breach.

MedImaging also argues that Saugatuck and FCGP cannot be held responsible for actions of the Board of Directors under the Shareholders' Agreement.  The Complaint, however, does not allege that the Board took improper action–it alleges that Saugatuck and FCGP actively participated in a determination to terminate, remove, or amend the Employment Agreement, and this determination breached an independent obligation imposed on them by the Shareholders' Agreement.

MedImaging also argues that Luthringer cannot state a claim against Saugatuck or FCGP because the Employment Agreement was not terminated, rather, the Employment Agreement was allowed to expire by its own terms.  While a state court may ultimately dismiss the Contested Defendants on these grounds, this Court cannot say that such an outcome is certain. The June 7 letter admits that

a determination not to continue Luthringer's employment or to renew the

Employment Agreement had been made, outside of the confines of a Board

meeting and prior to the expiration of the Employment Agreement.  Saugatuck and

FCGP might have been party to that determination.  A state court could find that

this determination, even if construed not to constitute a termination of the

Employment Agreement, constituted action to remove or amend the Employment

Agreement in violation of the Shareholders' Agreement.  If Saugatuck or FCGP

were party to such a determination, their participation could be construed to

constitute a breach of the procedural obligation imposed by Section 8(d)(iv)(7).

Moreover, the terms of the Employment Agreement do not govern the

obligations imposed by the Shareholders' Agreement.  The fact that the

Employment Agreement would have expired on its own terms with no further

action from the Board does not relieve signatories to the Shareholders' Agreement

from their contractual obligations.  The "termination" and "removal" of the

Employment Agreement prohibited absent Board vote in § 8(d)(iv)(7) could

conceivably include non-renewal of the Employment Agreement.

Luthringer's claims against the Contested Defendants may be weak, but this

Court cannot say that they are so implausible as to constitute fraudulent joinder.

Litigation in state court will tell whether these claims are successful.  Defendants are required to carry a heavy burden to establish removal and fraudulent joinder, and they have failed to do so here.  When in doubt, as it is here, the Court must remand.  Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly [and] all doubts about jurisdiction should be resolved in favor of remand to state court.").

## III.   ATTORNEY'S FEES

28 U.S.C. § 1447(c) authorizes an award of attorneys fees to a party who successfully seeks remand.  "[A]bsent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.  Martin v. Franklin Capital Corp., 546 U.S. 132, 135 (2005).  The mere fact that a case is remanded does not create a presumption in favor of awarding fees.  See Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006).

Luthringer's claims against the Contested Defendants are tenuous.  MedImaging did not act unreasonably by raising the fraudulent joinder argument,

even though that argument was ultimately unsuccessful.  MedImaging had an objectively reasonable basis for asserting the fraudulent joinder theory in an attempt to protect their right to a federal forum.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [10] is **GRANTED IN PART** and **DENIED IN PART**.  The Clerk of Court is **DIRECTED** to **REMAND** this action to the Superior Court of Fulton County, Georgia.

**IT IS FURTHER ORDERED** that Luthringer's motion for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** Defendant MedImaging, Inc's Motion to Drop All Other Defendants as Parties [3], the Motion to Dismiss of Defendants Saugatuck Capital Co. Ltd. Partnership IV SBIC and Family Capital Growth Partners, L.P. [4], Motion to Dismiss of Defendant Daniel Bafia [7], and Defendant Shaunnessy's Motion to Dismiss [5] are **DENIED** as **MOOT**.

**SO ORDERED** this 28th day of February, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE